UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SCOTT BODNAR and ROBERT CAPELLI | Civil No. 3:17cr157 (JBA)<br><br>February 13, 2019 |

## RULING DENYING DEFENDANTS' MOTION TO SUPPRESS

Defendants Robert Capelli and Scott Bodnar ("the Defendants") are each charged with conspiracy to possess with intent to distribute marijuana, possession with intent to distribute marijuana, conspiracy to launder monetary instruments, and laundering of monetary instruments. Though neither was present at the time of the challenged DEA search, Mr. Capelli and Mr. Bodnar move jointly to suppress evidence seized during the search of a private airplane. Oral argument was held on January 17, 2019 regarding the Defendants' standing to challenge the search of the airplane. For the reasons that follow, the Defendants' Motion to Suppress [Doc. # 153] is denied.

### I. Background

On June 29, 2017, a small private airplane flown by non-movant co-defendant Donald Burns arrived at Sikorsky Airport in Stratford, Connecticut. (Defs.' Mem. Supp. Mot. to Suppress [Doc. # 154] at 4; Govt. Opp. to Mot. to Suppress [Doc. # 156] at 3.) Upon landing, Mr. Burns was approached by agents from the Drug Enforcement Agency conducting a "ramp-check" of the plane pursuant to Federal Aviation Administration authority. (Govt. Opp. at 3.) The government contends that during this ramp check, Mr. Burns admitted that there was "some marijuana" on the plane and subsequently consented to a search of the plane by the agents. (*Id.* at 4.) DEA agents

searching the plane found "16 large duffle bags, containing a total of approximately 393 pounds" of marijuana. (*Id.*)

The government alleges that Mr. Burns told agents that "Robert Capelli was expecting the delivery of the marijuana;" that the "marijuana was bought and secured by Capelli from" a source in California and that he had "made between 12 to 15 aircraft related trips that have been organized and coordinated by Capelli," who tasked Mr. Burns with "fly[ing] the bulk quantity of US Currency . . . which is used to secure the purchase of the bulk quantities of marijuana." (*Id.* at 5.) Working with the agents, Mr. Burns then made contact with Mr. Capelli and made plans to deliver the marijuana. (*Id.*) At the time of delivery, both Mr. Capelli and Mr. Bodnar were arrested. (*Id.* at 6.)

The Defendants contend that, "[w]hile the airplane was solely registered to Mr. Burns," the plane was "jointly own[ed]" by Burns, Capelli, and Bodnar. (Defs.' Mem. at 3.) They claim that, along with "a third individual," Capelli and Bodnar "purchased the airplane with their personal funds and Mr. Burns was making installment payments to Mr. Bodnar, Mr. Capelli, and [that] third individual for the airplane." (*Id.*; *see* Exhibit A (Affidavits of Bodnar and Capelli) to Defs.' Mem. [Doc. # 154-1].) Mr. Bodnar and Mr. Capelli each claim separately that the "black duffle bags inside of the aircraft on June 29, 2018 belonged to myself and two other individuals" and that they "intended the contents of the black duffle bags to remain private while they were in the custody of Donald Burns." (Affidavits at 1-2.)

Mr. Capelli, Mr. Bodnar, Mr. Burns, and a fourth individual, Mr. Terrell Givens, were subsequently indicted on a variety of related charges.

### II. Discussion

Defendants Bodnar and Capelli move jointly to suppress evidence obtained during the search of the airplane as the fruit of a "flagrant[] violat[ion] of the defendants' Fourth and

Fourteenth Amendment rights." (Defs.' Mem. at 2.) The government argues that the Defendants lack standing to challenge the search of the airplane.[1] (Govt. Opp. at 6.)

The Fourth Amendment protects only those persons with a "legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). It is well established that "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969). Therefore, only those who were entitled to Fourth Amendment protections in the searched area – i.e., those who had a legitimate expectation of privacy in the area – may seek exclusion of evidence seized there. The Defendants bear the burden of demonstrating that they had a reasonable expectation of privacy in the area searched. *See Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980) (Defendant, "of course, bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy in" the searched area.).

A. **Subjective Expectation of Privacy**

First, in order to challenge the search of the airplane, Defendants must have "'exhibited an actual (subjective) expectation of privacy'" in the searched area. *Smith v. Maryland*, 442 U.S. 735, 740 (quoting *Katz v. U.S.*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

---

[1] "[I]n determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the 'definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.'" *Minnesota v. Carter*, 525 U.S. 83, 87–88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 139–140 (1978)). This ruling therefore analyzes the government's standing argument under the substantive "reasonable expectation of privacy" framework which effectively replaced the Fourth Amendment "standing" doctrine. *See id.*

Defendants argue that they did exhibit a subjective expectation of privacy in the airplane, and especially in the duffle bags, given the "style of bag" and their decision to transport the bags "us[ing] a trusted private pilot." (Defs.' Mem. at 8.) Because the "contents [of the duffle bags] could not be identified without opening the bags," Defendants argue that "it is evident that [they] intended to keep the contents of the bag private." (*Id.*) The government does not appear to dispute that Defendants manifested a subjective expectation of privacy. (*See generally* Govt. Opp. at 7-13). Thus the Court finds that the Defendants' efforts to conceal the inner contents of the bags did manifest their subjective expectation of privacy.

### B. Reasonable Expectation of Privacy

However, Defendants are entitled to Fourth Amendment protections only if that subjective expectation of privacy is "one that society is prepared to accept as 'reasonable'." *Smith*, 442 U.S. at 740 (quoting *Katz*, 389 U.S. 361 (Harlan, J., concurring)). Generally, legitimate "expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas*, 439 U.S. at 144, n. 12. Courts may consider a variety of factors in determining whether an expectation of privacy was reasonable.

Defendants argue that their expectation of privacy in the duffle bags was reasonable and legitimate because "[i]t is reasonable for an owner of luggage to expect that the contents remain private." (Defs.' Mem. at 8.) At oral argument on this motion to suppress, counsel for the Defendants argued that their expectation of privacy was reasonable because the Defendants entrusted their possessions to a trusted confidant over whom they exerted control and used a private airplane, thereby avoiding the more intrusive searching inherent in commercial air travel and affording them an expectation that no other persons would be permitted to enter the plane.

4

The government argues that the Defendants' expectation of privacy in the duffle bags was not reasonable because: i) as with automobiles, society has a lower expectation of privacy in airplanes; ii) ownership of the airplane and duffle bags has not been established; and iii) even if established, ownership "is not sufficient by itself to create a reasonable expectation of privacy," especially because Defendants were "bailors" who "trusted their duffle bags full of marijuana to Burns," had no ability to "exclude others from the searched airplane" and "purposefully disassociated themselves from the airplane while it carried contraband." (Govt. Opp at 8-11.)

i. **Automobile Exception**

The government argues that the "lower expectation of privacy" which society recognizes in automobiles applies similarly to airplanes. (Govt. Opp. at 8.) The "automobile exception" to the Fourth Amendment's warrant requirement permits warrantless searches of motor vehicles where the "car is readily mobile and probable cause exists to believe it contains contraband." *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). The reasoning for this exception includes cars' "ready mobility, an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear" as well as the "pervasive regulation" of automobiles which reduces an individual's "expectation of privacy in an automobile." *Id.* (internal quotations omitted). The government maintains that this reasoning should also apply to airplanes, reducing the Defendants' expectation of privacy in the plane.

Though the Second Circuit has not directly addressed the application of the automobile exception to non-commercial airplanes, several other circuits have done so, generally finding that the underlying reasoning for that automobile exception applies similarly to planes. *See U.S. v. Nigro*, 727 F.2d 100, 107 (6th Cir. 1984); *U.S. v. Linn*, 1994 WL 399179, at *2 (4th Cir. 1994); *United States v. Rollins*, 699 F.2d 530 (11th Cir. 1983); *United States v. Flickinger*, 573 F.2d 1349, 1357 (9th

Cir. 1978), *cert. denied*, 439 U.S. 836 (1978); *U.S. v. Brennan*, 538 F.2d 711, 721-22 (5th Cir. 1976), *cert. denied*, 429 U.S. 1092 (1977). *See also California v. Carney*, 471 U.S. 386, 393 n.2 (1985) ("With few exceptions, the courts have not hesitated to apply the vehicle exception to vehicles other than automobiles." (citing *Rollins*, 699 F.2d at 530, *cert denied*, 464 U.S. 933 (1983))).

Recognizing this trend among the circuits, and agreeing that the mobility and regulatory reasoning underlying the automobile exception should apply to non-commercial airplanes like the one at issue here, the Court concludes that the fact that the duffle bags were being transported on such an airplane does not insulate Defendants' bags from warrantless search upon probable cause and correspondingly reduces Defendants' expectation of privacy in them.

### ii. Property Rights

"[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. 143 (citing *Katz*, 389 U.S. at 353). "Still, 'property concepts' are instructive in 'determining the presence or absence of the privacy interests protected by that Amendment.'" *Byrd v. U.S.*, 138 S. Ct. 1518, 1526 (2018) (quoting *Rakas*, 439 U.S. at 144, n.12). "Indeed, more recent Fourth Amendment cases have clarified that the test most often associated with legitimate expectations of privacy, which was derived from the second Justice Harlan's concurrence in *Katz v. United States*, supplements, rather than displaces, 'the traditional property-based understanding of the Fourth Amendment.'" *Id.* (using "[r]eference to property concepts" to "assess[] the precise question" whether the defendant had a reasonable expectation of privacy in the searched area and explaining that those "two concepts in cases like this one are often linked") (internal citations omitted). So, although property

6

ownership may be instructive in determining whether Defendants' expectation of privacy was reasonable, it is not dispositive.

"[L]uggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Arkansas v. Sanders*, 442 U.S. 753, 762, (1979) (dicta), *overruled on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). However, possession of the property in question—here, the airplane or the duffle bags—and presence at the scene of the search may also determine whether an expectation of privacy was reasonable. *See Rawlings*, 448 U.S. at 105-106 (holding that defendant's "claimed ownership" of contraband "dumped" into another's purse did not produce reasonable expectation of privacy). "Ownership of the searched item, though a factor to be considered, is neither in itself sufficient to establish a legitimate expectation of privacy nor a substitute if the requisite legitimate expectation of privacy is lacking. . . . The absence of possession, however, may often result in a finding that an accused had no legitimate expectation of privacy because the absence of a right to exclude others from access is an important factor militating against a legitimate expectation of privacy." *U.S. v. Rahme*, 813 F.2d 31, 34 (2d Cir. 1987) (holding that a hotel's "lawful, exclusive, and adverse possession" of a briefcase and suitcase "deprived Rahme of any legitimate expectation of privacy in those articles").

Defendants claim ownership of the airplane and thereby a reasonable privacy interest in its contents, reasoning that, "[w]hile the airplane was solely registered to Mr. Burns," they "jointly own[ed]" the airplane with Burns. (Defs.' Mem. at 3.) They claim that, along with "a third individual," Capelli and Bodnar "purchased the airplane with their personal funds and Mr. Burns was making installment payments to Mr. Bodnar, Mr. Capelli, and [that] third individual for the airplane." (*Id.* at 12-14; *see* Affidavits of Bodnar and Capelli.) Defendants also argue that they have standing to challenge the search because they have "establish[ed]" undisputed ownership of the

7

duffle bags" and because it is "reasonable for an owner of luggage to expect that the contents remain private." (Defs.' Mem. at 8.)

In support of that argument, Defendants analogize to *U.S. v. Fields*, 113 F.3d 313 (2d Cir. 1997), where the Second Circuit Court of Appeals held that a defendant did have a reasonable expectation of privacy in an apartment in which he had been present 40-50 times, to which he had a key, and for access to which he paid the tenant $125 per month, even though the defendant did not have a lease with the landlord and did not reside in the apartment. (Defs.' Mem. at 13.) That the defendant in *Fields* was engaged in illegal activity in the apartment did not reduce his expectation of privacy. 113 F.3d at 321. Defendants analogize by arguing that they financed the airplane and then "paid Mr. Burns to fly the airplane across the country, essentially renting the airplane back from him in order to transport their duffle bags," (*id.* at 14), (which complicates their earlier claims of plane ownership).

The outcome in *Fields* turned on several factors not present here. The Fourth Amendment affords heightened protection afforded to residences (especially as compared to airplanes, accepting the applicability of the automobile exception). *See, e.g., United States v. U.S. Dist. Ct. for the E. Dist. of MI, S. Div.*, 407 U.S. 297, 313 (1972) ("physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed"). That the defendant in *Fields* was physically present in the apartment at the time of the search with the express permission of the apartment's primary tenant also distinguishes that case from the facts at issue here. Without any physical presence in the searched area, and given Mr. Burns' control over the airplane, the Defendants lacked the ability to exclude others which is often central to a reasonable expectation of privacy. *See Rahme*, 813 F.2d at 34 (citing *Rawlings*, 448 U.S. at 105). Finally, unlike in *Fields*,

8

Defendants' claims regarding the financing structure of the airplane contradict their assertion that they "essentially rent[ed]" the airplane from its owner.

The government counters that Defendants have not established their ownership of the airplane and therefore cannot claim a reasonable expectation of privacy in its contents, because "the defendants have not [] set forth any note, mortgage, warranty deed, or Affidavit from Burns to support their claim" of plane ownership, nor have they "proffered any formal agreement of partial ownership, let alone a loan document." (Govt. Opp. at 12.) The government further argues that because "[o]wnership of the item seized is not sufficient by itself to create a reasonable expectation of privacy," (Govt. Opp. at 8 (citing *U.S. v. Salvucci*, 448 U.S. 83, 91-92 (1980))), and because a "person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed," (*id.* (quoting *Rakas*, 439 U.S. at 134)), Defendants have offered no argument or evidence which would render reasonable their subjective expectation of privacy.

The government also argues that even if Defendants own the airplane or duffle bags, Defendants did not maintain a "protected privacy interest sufficient to confer standing" in that property because they were "bailors" who "trusted their duffle bags full of marijuana to Burns." (Govt. Opp. at 10.) A bailee of luggage, i.e. a person in temporary possession of luggage belonging to another, may have a legitimate expectation of privacy in that luggage. *See U.S. v. Perea*, 986 F.2d 633, 642 (2d Cir. 1993). However, a bailor of luggage, i.e. an "owner who had relinquished custody," might not retain a legitimate expectation of privacy in that luggage. *See id.* at 641 (describing *Rawlings v. Kentucky*'s finding that the defendant there lacked a reasonable expectation

9

of privacy as a case "involv[ing] the privacy expectations of the narcotics' owner who had relinquished custody, i.e., the bail*or*" (emphasis in original)).

The government argues further that because Defendants "purposefully disassociated themselves from the airplane while it carried contraband," they "should not now be heard to claim that they had a privacy interest in the marijuana from which they had purposefully separated themselves." (Govt. Opp. at 11.) "Neither possession nor ownership of property establishes a legitimate expectation of privacy unless the party vigilantly protects the right to exclude others," *U.S. v Torres*, 949 F.2d 606, 608 (2d Cir. 1991), which Defendants necessarily failed to do as they permitted their claimed property to travel across the country in their absence. *See also U.S. v. McKennon*, 814 F.2d 1539 (11th Cir. 1987) ("We do not believe that the Fourth Amendment was designed to protect the privacy interests of an individual who conspires to transport contraband, perceives the possibility that the container will be searched, severs all appreciable ties with the courier in an effort to escape criminal liability, and then asserts an interest in the container after the contraband and the conspiracy have been discovered in order to articulate an expectation of privacy and suppress evidence of criminal activity.")

Courts weigh a variety of considerations in determining whether an expectation of privacy is reasonable. *See Byrd*, 138 S. Ct. at 1527 ("Although the Court has not set forth a single metric or exhaustive list of considerations to resolve the circumstances in which a person can be said to have a reasonable expectation of privacy, it has explained that 'legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" (quoting *Rakas*, 439 U.S. at 144 n.12)). Here, regardless of whether Defendants were technically owners of the airplane and/or duffle bags, the circumstances of the search make clear that

Defendants' expectation of privacy is not "one that society is prepared to accept as reasonable," *Smith*, 442 U.S. at 740 (internal quotation omitted): i) Defendants were not present at the time of the search and did not maintain possession of or the right to exclude others from the airplane or duffle bags, ii) they placed those duffle bags under the control of a third party, and iii) the bags were transported on a readily-mobile, highly-regulated airplane. Given those considerations, the Court finds that Defendants had no legitimate expectation of privacy and therefore cannot challenge the search under the Fourth Amendment.

### III. Conclusion

For the foregoing reasons, the Defendants' Motion to Suppress [Doc. # 153] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of February 2019.